UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT WEYANT, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | Case No. 4:21-cv-1092-SRC |
| ) | |
| CO II HUBBARD, et al., ) | |
| ) | |
| Defendant(s). ) | |

**Memorandum and Order**

This matter is before the Court upon review of Plaintiff Scott Weyant's Amended Complaint. Doc. 12. Plaintiff, an inmate at South Central Correctional Center (SCCC) brings this action asserting claims against Defendants the Missouri Department of Corrections, Correctional Officer Hubbard, Correctional Officer Cunningham, and Corizon Medical for violations that purportedly occurred during his incarceration at Farmington Correctional Center (FCC). The Court dismisses Plaintiff's claims against Defendants the Missouri Department of Corrections and Corizon Medical as frivolous and for failure to state a claim for relief. *See* 28 U.S.C. § 1915A. The Court also dismisses Plaintiff's claims against the individual defendants in their official capacities and his claims for alleged deliberate indifference to his serious medical needs. However, the Court has determined that, for purposes of 28 U.S.C. § 1915A review, Plaintiff has sufficiently pleaded facts to support claims against Defendants Correctional Officers Hubbard and Cunningham in their individual capacities for excessive force in violation of the Eighth Amendment. The Court orders issuance of process on these claims.

**Legal Standard**

Under 28 U.S.C. § 1915A, the Court is required to review a civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(A)(a). The term "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." 28 U.S.C. § 1915A(c). Pursuant to this section, the Court must dismiss a complaint if it "is frivolous, malicious, or fails to state a claim upon which relief can be granted" or if it "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(A)(b). Here, Plaintiff is a convicted state prisoner who is suing employees of a governmental entity. He paid the full $402 filing fee on September 14, 2021. Therefore, his complaint is subject to 28 U.S.C. § 1915A screening.

To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

**The Amended Complaint**

Plaintiff, an inmate at SCCC, filed this action pursuant to 42 U.S.C. § 1983 on September 2, 2021. Plaintiff named the following individuals and entities as defendants in this action:

Correctional Officer Unknown Hubbard; Correctional Officer Unknown Cunningham; and Corizon Medical. He asserted that his civil rights had been violated during his incarceration at FCC on or about June 30, 2020.

On February 16, 2022, the Court reviewed Plaintiff's complaint pursuant to 28 U.S.C. § 1915A.[1] The Court found that as written, Plaintiff's complaint was subject to dismissal. Accordingly, Plaintiff was required to submit an amended complaint no later than March 9, 2022. Doc. 9. On March 10, 2022, Plaintiff submitted his amended complaint. Doc. 10. On March 11, 2022, Plaintiff was ordered to complete the "Certification and Closing" section of his amended complaint, sign the pleading and return it to the Court for filing. Doc. 11. Plaintiff did so on March 21, 2022. Doc. 12.

Plaintiff's amended complaint, brought pursuant to 42 U.S.C. § 1983, alleges violations of his civil rights pursuant to 42 U.S.C. § 1983, which he claims occurred during his incarceration at FCC. He names the following individuals and entities as defendants in this action: the Missouri Department of Corrections; Correctional Officer Unknown Hubbard; Correctional Officer Unknown Cunningham; and Corizon Medical. Plaintiff sues Correctional Officers Hubbard and Cunningham in their individual and official capacities.

Plaintiff claims that on or about June 30, 2020, at approximately 10:08 p.m., Correctional Officers Hubbard and Cunningham were escorting him to 5 House at FCC. He states that the officers made him walk barefoot over rocks "unnecessarily" with his feet shackled together and his arms handcuffed behind his back and the officers' hands firmly gripping the sides of his arms. Plaintiff alleges that when he reached the gates between the Education and Library

---

[1] Plaintiff paid the full $402 filing fee in this matter on September 14, 2021. As such, the Court reviewed plaintiff's complaint pursuant to 28 U.S.C. 1915A.

Building, he stepped on a sharp rock, "winced from the pain," and "tried to hobble." Plaintiff states that "the two officers falsely announced that [he] was being non-compliant and threw [him] to the ground, with both officers landing on top of [him]." He claims that there was no need to exhibit force against him, as he was not resisting the officers at the time he was thrown to the ground.

When Correctional Officers Cunningham and Hubbard got on top of Plaintiff, the action "dislocated and broke" his index finger on his left hand. Plaintiff states that it was "obvious" that he needed medical attention. Plaintiff, however, does not indicate if he was given immediate medical treatment for his finger at this time.

Plaintiff claims he took advantage of all sick-call procedures, when available. However, he states that he was kept in disciplinary segregation to "prevent corrective action" for his injuries. He also asserts that after he filed grievances relative to the incident, "things only got worse." However, he does not articulate exactly how "things got worse," merely stating that he was "forced to file a complaint to be seen for [his] injuries." As noted above, it is not entirely clear what "injuries" Plaintiff is referring to other than the injury to his finger articulated above.

Plaintiff states that despite his injury being "obvious," there was a delay in treatment for his injury during his stay in disciplinary segregation. However, Plaintiff fails to articulate whom he asked for medical assistance during his time in segregation. Plaintiff also fails to articulate exactly how long the alleged delay was before he was provided medical treatment for his hurt finger.[2]

---

[2]It is apparent from the information provided by Plaintiff that at some point he was given surgery on his finger. Plaintiff has not provided the Court with the date this surgery occurred or provided the names of the medical providers he saw leading up to the surgery. He has also not provided the Court with the information relative to who decided surgery was necessary or when.

4

Plaintiff claims that if the Court subpoenas his medical records at FCC, he will be able to show "the retaliation [he] received leading to [his] transfer to another camp for the reason to additionally delay treatment needed to correct all of the inadequate treatment handled before." Plaintiff states that he is suing for "medical negligence," because they messed up his treatment. He claims that he received a fracture and dislocation of his index finger and subsequent surgery failed to alleviate the damage or pain and led to infection in the finger.

Plaintiff asserts the following:

> The Missouri Department of Corrections and Corizon Medical failed to provide proper medical treatment resulting in permanent damage to my limb, which has never healed properly and continues to cause me pain and ability loss.  This damage is detrimental to my future ability to acquire and maintain employment as an artist and mechanic, my trades.

Doc. 12 at p. 4.

Attached to Plaintiff's amended complaint are several documents apparently filed in the grievance system maintained by the Missouri Department of Corrections.[3]  On January 22, 2021, Plaintiff submitted an Informal Resolution Request (IRR) relative to his medical concerns.  The IRR states:

> I had to come up to medical repeatedly and to no avail, did not help me, finally a nurse that shall not be named helped as much as anyone could and she stated I'm unsure why they won't help you!!  On this specific day I self declared and went around Nurse Practitioner Herrington (?) and Joust looked at my extremely infected finger and prescribed antibiotics, left up to Herrington who knows what would of [sic] happened, now on the 19th I saw Joust again and she showed me my X-Ray and we spoke and she explains my finger is still broken but in "perfect" alignment. I want my finger fixed.

*Id.* at p. 15.

---

[3]Pursuant to Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

5

Nurse Lisa Ivy, Health Service Administrator, wrote a grievance response relative to Plaintiff's IRR on January 28, 2021. *Id.* at p. 18. In her grievance response she reminded Plaintiff that he had already been seen by a specialist for a follow-up appointment after a surgical repair of the fracture of his index finger in November of 2020. He was also reminded that, "[t]he specialist provider offered an option of surgical fusion; however, [Plaintiff] chose not to do that due to not wanting another painful surgery." *Id.* Nurse Ivy stated bluntly, "It appears that having another surgery is the offered way of repair." *Id.* Plaintiff was told that the allotted time for healing from an orthopedic surgery is four to six months, depending on numerous factors, one of which was the joint which was repaired. *Id.*

Plaintiff filed an IRR on April 28, 2021, relative to his alleged inability to receive medical care after his finger surgery. *Id.* at p. 16. In the IRR, Plaintiff states that after his finger had been dislocated/broken on June 30, 2020, he had surgery on the finger, but it was still broken and deformed. He complained that the surgery was continuously put off and the "bone disappeared" as a result. He stated that his surgeon had explained to him that this was the cause for his pain, and his knuckle remained deformed. *Id.* Plaintiff has not included a separate response from defendants with his amended complaint. However, at the bottom of his IRR, an unknown person from medical wrote, "Your ongoing pain is being managed with Tramadol as well as your new script (pyridoxine) which was prescribed the day you submitted this IRR."[4]

Plaintiff has included with his amended complaint a copy of an IRR response prepared by an individual named Nicki Penny, Functional Unit Manager, dated received on April 30, 2021. *Id.* at p. 19. The document appears to be responding to Plaintiff's IRR filed on April 18, 2021, alleging the use of force by Officers Cunningham and Hubbard on June 30, 2020, which resulted

---

[4]Plaintiff's IRR number is FCC 21-538.

6

in his broken finger.  *Id.* at p. 19.  Ms. Penny denied plaintiff's IRR, noting that the event which Plaintiff was grieving took place more than ten months previous, outside the allowable time in the grievances rules for filing an IRR.

Plaintiff seeks monetary damages and additional medical care for his finger.

## Discussion

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, alleging that Defendants Correctional Officers Hubbard and Cunningham used excessive force against him in violation of the Eighth Amendment.  He additionally asserts that unnamed and unknown medical staff failed to properly treat his finger injury (and delayed proper treatment) in violation of the Eighth Amendment.

Based on the review of the amended complaint, and for the reasons discussed below, the Court orders issuance of process on Plaintiff's claims against Defendants Correctional Officers Hubbard and Cunningham for excessive force.  However, the Court dismisses the remaining claims pursuant to 28 U.S.C. § 1915(e)(2)(B).

### A. Claims Against the Missouri Department of Corrections and Claims Brought Against the Individual Defendants in their Official Capacities

Plaintiff sues the Missouri Department of Corrections in his first amended complaint.  He also sues Correctional Officers Hubbard and Cunningham in their official capacities.  Claims brought against the Missouri Department of Corrections are in fact claims brought against the State of Missouri.  *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991).  Similarly, claims brought against state officers in their official capacities are claims against the State of Missouri.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

7

The State of Missouri is not a "person" for purposes of a 42 U.S.C. § 1983 claim for money damages, *id.* at 71, so the Court dismisses Plaintiff's claims for relief against both the Missouri Department of Corrections and Officers Hubbard and Cunningham in their official capacities.

### B. Claims Against Corizon Medical

"A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.,* 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

Plaintiff has failed to allege that a policy, custom, or official action of Corizon Medical inflicted an injury upon him such that it should be held liable for damages in this action, so the Court dismisses Plaintiff's allegations against Corizon.

### C. Individual-Capacity Claims Against Defendants

#### 1. Excessive-Force Claim

Plaintiff asserts that he was subjected to excessive force, in violation of the Eighth Amendment, by Defendants Correctional Officers Hubbard and Cunningham at FCC on June 30, 2020. He claims that Defendants were walking him, handcuffed and shackled, to 5 House over rocks while he was barefoot. Plaintiff specifically states that he was *not* resisting the officers, but that he was having difficulty walking over the sharp rocks while barefoot. Doc. 12 at pp. 3–4.

Plaintiff claims that he stepped on a sharp rock, winced and tried to hobble, and the two officers falsely announced that he was being non-compliant and threw him to the ground, with

8

both officers landing on top of him. Plaintiff alleges that this action "dislocated and broke" his index finger on his left hand. *Id.*

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9–10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

At this point in the case, during § 1915A review, the Court must take Plaintiff's allegations as true. Plaintiff has alleged that he was having difficulty walking over rocks barefoot, while handcuffed and shackled. He claims that Correctional Officers Hubbard and Cunningham threw him to the ground, not to maintain or restore discipline, but instead to cause him harm. Given the circumstances as described by Plaintiff, the Court finds that Plaintiff has pleaded sufficient facts to survive initial review for an Eighth Amendment excessive-force claim against Defendants Hubbard and Cunningham. Therefore, the Court orders the Clerk to issue

9

process on Plaintiff's Eighth Amendment excessive-force claim against Defendants in their individual capacities.

### 2. Serious-Medical-Need Claims

Plaintiff asserts that he not only asked for medical care and was denied care for his finger, but that care was delayed for a time while he was in segregation. The Court first addresses Plaintiff's contention that Defendants were deliberately indifferent to his serious medical needs.

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference to the prisoner's serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1237–38 (8th Cir. 1997).

To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need and that prison officials knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). In other words, whether a prison official has been "deliberately indifferent requires both an objective and a subjective analysis." *Hall v. Ramsey Cnty.*, 801 F.3d 912, 920 (8th Cir. 2015). Under the objective prong, the plaintiff must establish that he suffered from an objectively serious medical need, while under the subjective prong, he or she must show that a prison official knew of but disregarded that serious medical need. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014).

As to the subjective prong, an inmate must demonstrate that a prison healthcare provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to

10

provide essential care." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017); *see also Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (explaining that "plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the arrestee's health"). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Plaintiff fails to indicate whom he asked for medical assistance at FCC. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). To support a claim, Plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019). Plaintiff's insistence that he was not offered medical care either directly after the incident on June 30, 2020, or during his time in segregation, without elaborating as to exactly whom he asked for such care, is fatal to his claim for relief.

Similarly, Plaintiff is unable to establish a constitutional violation for a delay in medical treatment. Plaintiff has failed to articulate whom he asked for medical assistance during his time in segregation or after he left segregation. He has also failed to indicate how long the alleged delay was before he was provided medical treatment for his hurt finger.

Although deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care, *Estelle*, 429 U.S. at 104–05, when a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).

To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects. *Jackson*, 815 F.3d at 1119–20; *see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

A delay as brief and as non-detrimental as Plaintiff alleges does not support a claim for deliberate indifference to his serious medical needs. *See Johnson*, 452 F.3d at 973 (concluding that a one-month delay in treating a fractured finger did not rise to a constitutional violation); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (finding that a prisoner's claim for delay of one month between complaint of leg pain and visit with doctor was insufficient to state a constitutional claim absent allegations the condition required immediate attention or the delay in treatment aggravated the condition). Because Plaintiff has failed to indicate how long the alleged delay was in this case, the Court is unable to assess the effect of the alleged delay in this case. Furthermore, Plaintiff has still failed to articulate the particular defendant purportedly responsible for the alleged delay. Accordingly, he has failed to allege a constitutional violation in this instance.

D.  **Instructions for Service**

Because Plaintiff paid the full filing fee of $402, he is required to effectuate service of process in this action.  Plaintiff must serve defendants Unknown Hubbard and Unknown Cunningham with a summons in accordance with Federal Rule of Civil Procedure 4.  The Court instructs the Clerk to send Plaintiff two file-stamped copies of the amended complaint, Doc. 12, as well as summonses.  To effectuate service, Plaintiff must either hire a private process server or have someone over the age of 18 who is not a party personally deliver the summons and amended complaint to the defendants.  Alternatively, Plaintiff may serve in accordance with the methods of service set forth in Missouri state law.  Return of service must be recorded and filed with the Court no later than ninety (90) days of the date of this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to defendant Correctional Officers Unknown Hubbard and Unknown Cunningham in their individual capacities.  **Because plaintiff paid the full filing fee, he is required to effectuate service on his own behalf.**

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), Defendant Correctional Officers Unknown Hubbard and Unknown Cunningham shall reply to Plaintiff's claims of excessive force in violation of the Eighth Amendment within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint as to Defendants the Missouri Department of Corrections and Corizon Medical because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.  *See* 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint as to Plaintiff's claims of deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  These claims are **DISMISSED.**  *See* 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint as to Plaintiff's claims against defendant Correctional Officers Unknown Hubbard and Unknown Cunningham in their official capacities. These claims are **DISMISSED.**  *See* 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that Plaintiff is required to serve Defendant Correctional Officers Hubbard and Cunningham with process, and file return of process no later than ninety (90) days from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that failure to serve Defendant Correctional Officers Hubbard and Cunningham within ninety (90) days from the date of this Memorandum and Order will result in a dismissal of this action, pursuant to Federal Rule of Civil Procedure 4(m).

**IT IS FURTHER ORDERED** that an appeal of this Memorandum and Order would not be taken in good faith.

A separate Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 6th day of September, 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE